1          UNITED STATES DISTRICT COURT
            MIDDLE DISTRICT OF FLORIDA
2                ORLANDO DIVISION

3   - - - - - - - - - - - - - - -X
      UNITED STATES OF AMERICA,    :
4                                  :
                                   :
5          Plaintiff,              :  Case No.:
                                   :  6:16-cr-270-Orl-22DCI
6     vs.                          :
                                   :
7     JAMIE ESPOSITO,              :  Orlando, Florida
                                   :  August 25, 2017
8                                  :  9:35 a.m.
            Defendant.             :
9                                  :
                                   :  REDACTED TRANSCRIPT
10                                 :
    - - - - - - - - - - - - - - -X
11
                  TRANSCRIPT OF SENTENCING
12        BEFORE THE HONORABLE JOHN ANTOON II
              UNITED STATES DISTRICT JUDGE
13

14

    APPEARANCES:
15
      Counsel for Plaintiff:       Shawn Napier
16
      Counsel for Defendant:       Alisha Marie Nair
17

18

19

20  Proceedings recorded by mechanical stenography.
    Transcript produced by computer-aided transcription.
21

22  Court Reporter:  Suzanne L. Trimble, CCR, CRR, RPR
                     Federal Official Court Reporter
23                   401 West Central Boulevard, Suite 4600
                     Orlando, Florida 32801
24                   e-mail: trimblecourtreporter@gmail.com

25

PROCEEDINGS

1

2     THE COURTROOM DEPUTY:  This is in the matter of the

3  United States of America v. Jamie Esposito, Case

4  No. 6:16-criminal-270-Orlando-28DCI.

5     Will counsel please state your name for the record?

6     MR. NAPIER:  Good morning, Your Honor.  Shawn Napier

7  on behalf of the United States.  With me at counsel table is

8  his Special Agent Joe Grey.

9     MS. NAIR:  Good morning, Your Honor.  Alisha Marie

10  Nair here on behalf of Mr. Esposito.

11     THE COURT:  Ms. Nair, would you have your client

12  stand to be sworn?

13     THE COURTROOM DEPUTY:  Please raise your right hand.

14     (Jamie Esposito sworn.)

15     THE COURT:  Sir, what is your full name?

16     THE DEFENDANT:  Jamie Esposito.

17     THE COURT:  And, Mr. Esposito, have you had any

18  pills, drugs, medication, or alcohol within the past 48 hours?

19     THE DEFENDANT:  No, Your Honor.

20     THE COURT:  Have you ever been diagnosed with a

21  mental or personality -- a mental disorder or personality

22  disorder, other than what is stated in the report attached to

23  the presentence report?

24     THE DEFENDANT:  No, Your Honor.

25     THE COURT:  Are you thinking clearly and exercising

1  your best judgment now?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  You may be seated.

4          THE DEFENDANT:  Thank you.

5          THE COURT:  Mr. Esposito, on March 29, 2014, you

6  entered a plea of guilty to Counts 3 and 4 of the Indictment

7  charging you with production of child pornography in violation

8  of Title 18 United States Code, Sections 2251(a) and (e), and

9  Count 6 of the Indictment charging you with possession of

10 child pornography in violation of Title 18 United States Code,

11 Sections 2252A(a)(5)(B) and 2252A(b)(2).

12          This Court has previously accepted your plea and

13 adjudged you guilty of those offenses, and we've now reached

14 that stage in the proceedings where I need to ask questions of

15 you, your attorney, and the attorney for the Government.

16          First, have you had an opportunity to read and

17 discuss with your attorney the presentence report?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Do you have any objections as to the

20 factual accuracy of the report?

21          MS. NAIR:  Yes, Your Honor.

22          THE COURT:  Okay.  What is that objection?

23          MS. NAIR:  Yes, Your Honor.  May I approach the

24 podium?

25          THE COURT:  Yes, ma'am.

1    MS. NAIR:  Thank you.  Your Honor, I apologize.

2 There is an issue in the factual basis, and we noted it in our

3 objections to the presentence report, to the wording of

4 vaginal penetration, and I stand before this Court seeking not

5 to minimize any of Mr. Esposito's behavior, as far as what

6 occurred with him and his daughter.  The issue that

7 Mr. Esposito has and what he wants to correct for the Court is

8 that there was no vaginal penetration.  There was anal

9 penetration.  There was oral penetration.  There was a lot of

10 things that were done.  The vaginal penetration, however

11 absurd this may sound, is something that Mr. Esposito --

12    THE COURT:  Is he talking about -- are you talking

13 about the encounter with Mr. McDonald or with your client?

14    MS. NAIR:  Client and Mr. McDonald.

15    THE COURT:  Both.

16    MS. NAIR:  Both.  I had the unfortunate opportunity

17 of viewing the images, and I would like to spare the Court

18 from viewing the images as well.  We went to the Department of

19 Homeland Security on Friday.  I met with Agent Grey and AUSA

20 Napier.  The images that I had to view show the vibrator on

21 the surface of the child's vagina.  It shows anal penetration.

22 It shows the penis of Mr. Esposito on the exterior of the

23 child's vagina, and it shows, at best, the rubbing on the

24 labia of the vagina, but no penetration.

25    The argument that the Government put forth is no

1    matter how slight, that it actually is penetration.

2         There was another image that was shown that I had

3    requested that it could be brought to the Court if we had to

4    make this argument -- which I've tried on many occasions to

5    get the Government to concede to say *in union with her vagina*

6    or change the language, but have been unsuccessful in that.

7         There is an image that actually can give the Court

8    contrast, where there actually shows vaginal penetration, and

9    it was to Shauna with the items -- with the vibrator.  I mean,

10   you can actually see the contrast versus what happened with

11   the child versus what happened with the adult.  And so it --

12        THE COURT:  You say *to Shauna*, that's Ms. Boselli?

13        MS. NAIR:  Yes.  That's correct.

14        But even in doing so, I made the specific request.

15   I sat with Homeland Security Agent Grey and AUSA Napier, and I

16   informed both of them that day -- we actually set aside files

17   that we agreed would be brought to the Court, and today I was

18   informed by AUSA Napier that Agent Grey did not bring the

19   contrast video to show the Court so the Court could have an

20   opportunity to understand, if the Court must see the images,

21   and I would say I don't think it's necessary for the Court to

22   see the images just to change the language from *vaginal*

23   *penetration* to *union with*.

24        THE COURT:  Let me ask you this:  Does this have any

25   bearing on the guideline score?

1       MS. NAIR:  It has zero bearing on the guideline

2  score.

3       THE COURT:  Are you arguing what a legal -- a legal

4  definition of penetration?

5       MS. NAIR:  We are arguing that there was no vaginal

6  penetration, even how -- even considering what the legal

7  definition is, no matter how slight, because the images

8  that -- the images and videos that I was able to see does not

9  show insertion of an item into the vagina.

10       Mr. Esposito has no disagreement with the language

11  reading --

12       THE COURT:  Do you disagree what you saw would

13  constitute in state court as sexual battery?

14       MS. NAIR:  I don't practice in Florida.  I'm not

15  licensed in Florida.  I'm not --

16       THE COURT:  So you don't --

17       MS. NAIR:  I'm not absolutely familiar with the law

18  of Florida, but I would argue that the Florida standard of

19  what sexual battery would constitute is not at issue here

20  because it's not for scoring purposes, and what he did, he --

21  it does constitute sexual battery in other ways.  So I'm not

22  arguing that point to the Court.

23       I believe Mr. Esposito -- if the language were to

24  read *union with*, there would be no dispute here, Your Honor.

25  And he's not minimizing anything that he has done.  He just

1  wanted to state for the record he did not vaginally penetrate

2  his daughter.

3          THE COURT:  Okay.  Excuse me for one minute.

4          Mr. Napier, do you wish to be heard?

5          MR. NAPIER:  Just briefly, Your Honor.  There's no

6  dispute between the parties, Your Honor, that we do not have

7  evidence of what I'll characterize as full penetration, and I

8  think that's the video, and I apologize to the Court.  There

9  was miscommunication on my part with the agent on what to

10 bring to court today, and I take full responsibility for that.

11         What she wanted to show with regard to Ms. Boselli

12 was what I'll characterize as full penetration involving a sex

13 toy, and that was full penetration by the victim in this case

14 on Ms. Boselli.

15         THE COURT:  That's not relevant to this.

16         MR. NAPIER:  That's not relevant.  That was the

17 video that she wanted to show for contrast purposes.

18         THE COURT:  The question is, is there a photograph

19 of what she's describing the defendant as having done?

20         MR. NAPIER:  Yes, Your Honor.  We have multiple

21 photographs from videos and the photos that were taken.  What

22 those show, Your Honor, are the defendant's penis rubbing on

23 the outside of the vagina and various sex toys, what appears

24 to be slight penetration of the vagina.  And that's the

25 Government's position, Your Honor, is I didn't feel like in

good conscience that I could agree to take that out when I
felt like the definition that I had was the penetration no
matter how slight of the vagina with any body part or object.

I don't dispute it was not full penetration, but I
believe that the photos and the videos that were taken do show
what I'll describe -- and I don't mean this to minimize the
conduct here obviously, but I believe it does show at least
slight penetration.

MS. NAIR:  Your Honor --

THE COURT:  Yes, ma'am.

MS. NAIR:  Thank you, Your Honor.  Mr. Esposito has
just informed me that he wishes not to prolong this issue any
further.

THE COURT:  Does that mean you withdraw the
objection?

MS. NAIR:  Pursuant to his wishes, yes, Your Honor.

THE COURT:  The motion to withdraw the objection is
granted.

Are there any objections as to the probation
officer's application of the guidelines?

MS. NAIR:  No, Your Honor.

THE COURT:  Do you agree with your attorney's answer
to that question, Mr. Esposito?

THE DEFENDANT:  I'm sorry.  I'm sorry.  Could you
please restate the question?

1          THE COURT:  Do you have any objection as to the

2  application of the guidelines by the probation officer?

3          THE DEFENDANT:  No, Your Honor.

4          THE COURT:  Does the Government have any objections?

5          MR. NAPIER:  No, Your Honor.

6          THE COURT:  Then the Court adopts the undisputed

7  factual statements and guideline applications contained in the

8  presentence report, and I determine that the guidelines are

9  total offense Level 43, criminal history category I,

10  960 months imprisonment, five years to life supervised

11  release, deferred restitution, 50,000 to 500,000 dollar fine,

12  $300 special assessment.

13          Now, Mr. Napier, is there any objection to those

14  findings?

15          MR. NAPIER:  None from the Government, Your Honor.

16          MS. NAIR:  No, Your Honor.

17          THE COURT:  I wanted to ask you a couple of

18  questions about the presentence report, Mr. Napier.  Is there

19  any way I can tell by the presentence report or other filings

20  how old the victim was when the defendant's criminal conduct

21  relating to that child began?

22          MR. NAPIER:  Yes, Your Honor.  I believe the age of

23  the victim is mentioned in the presentence investigation now,

24  and I believe the best evidence that we have is the abuse went

25  on for 18 to 24 months before.

1       THE COURT:  So six to seven is correct?

2       MR. NAPIER:  Correct, Your Honor.

3       THE COURT:  Okay.  That's what the report said.  I

4 wanted to make sure that it did not begin earlier than that.

5       From the presentence report and the filings, I am

6 unable to determine the number of times the defendant abused

7 the child.  Is that correct?

8       MR. NAPIER:  Your Honor, unfortunately we don't have

9 an exact number.  Based on the defendant's own statement, he

10 estimated that he abused her once or twice a month for

11 18 months, and that's what's in the presentence investigation

12 report.  Obviously, that would equate to approximately 36

13 times; however, we don't -- I don't believe we have anything

14 more definitive than that.

15       If I could have just a moment with the agent,

16 though, Your Honor.  And, Your Honor, I was just checking with

17 the agent to see if we had any other specific information

18 based on the child's counseling or anything like that, but we

19 do not.

20       THE COURT:  Mr. Napier, the Government has filed a

21 motion in this case pursuant to 5K motion.  Do you wish to be

22 heard on that motion?

23       MR. NAPIER:  Just briefly, Your Honor, if I may

24 approach.

25       MS. NAIR:  Your Honor, at this time we ask that this

1   portion of the proceedings be sealed.

2            THE COURT:  When you say *this portion of the*

3   *proceeding be sealed*, are you asking that the courtroom be

4   cleared or that the transcript be sealed?

5            MS. NAIR:  That the transcript be sealed.

6            THE COURT:  Okay.  Motion granted.









Okay.  Now, the victim in this case is a minor, and I assume she's not in the courtroom, and it would be probably inappropriate to have her in the courtroom, but is there a representative of the victim in the courtroom?

MR. NAPIER:  Yes, Your Honor.  Tracie Esposito is in the courtroom and would like to make a statement.

THE COURT:  Okay.

THE WITNESS:  Your Honor.

THE COURT:  Yes, ma'am.  What is your name?

THE WITNESS:  My name is Tracie Esposito.

THE COURT:  Are you comfortable standing, or would you rather sit?

1          THE WITNESS:  I would prefer to sit, if that's all

2     right.

3          THE COURT:  Right over here.  Yes, ma'am.

4          THE WITNESS:  Yes, Your Honor.  I would like to read

5     a statement of some things that I wrote, partly shortly after

6     this happened.

7          THE COURT:  Yes, ma'am.

8          THE WITNESS:  If I may proceed, Your Honor, yes?

9          THE COURT:  Yes, ma'am.

10         THE WITNESS:  Okay.  No words can ever adequately

11    describe the pain, devastation, and trauma and betrayal that

12    you have caused us all.  You had a wife and a daughter who

13    loved you and trusted you and who would have always been there

14    for you.  You took everything that was good and pure and

15    joyful in our lives and destroyed it.  You shattered our

16    world, our trust, our everything.

17         What you have done is unthinkable, horrific, utterly

18    inhuman and sickening.  You were supposed to love, respect,

19    and protect our daughter, our sweet, precious little girl.

20    Instead, you violated her in the most vial, disgusting, and

21    foul way.  You have traumatized her and scarred her for life,

22    damage that is irreparable.  Your actions can never been taken

23    back.

24         You coward.  You spineless lying slime.  You master

25    manipulator.  You swine.  You have tainted and poisoned us all

1  with your filth, your perversion, manipulation, and deceit.

2      Our daughter trusted you to keep her safe, to be her

3  daddy, her protector, and to watch over her.  You used her in

4  your sick and depraved fantasies and in your cruelty

5  manipulated her into believing she was a willing participant.

6  She will bear the scars of that damage for the rest of her

7  life.

8      How could anyone do this to their own daughter?  How

9  could any human being harm an innocent child in this way?

10     You don't deserve to walk the same earth as her or

11 the sun to shine upon your face as a free man ever again.  You

12 deserve every horror that will come to you.

13     The ripple effect:  Your actions have left both our

14 families in shock and devastation.  Nothing and no one will

15 ever be the same.  You have left us all hurting, rageful,

16 deeply sorrowful, and searching for answers that will never

17 come.

18     How could you be these two people?  The man that we

19 all knew and loved, was a great guy, a loving father,

20 considerate, and caring to others.  No one would have ever

21 thought you capable of this.

22     Who could think that anyone could be capable of

23 this?  Atrocious, despicable, revolting, you had us all

24 fooled, had everyone convinced of you who you were, the man

25 who they thought they knew, the facade, but what you were

hiding was unspeakable darkness.

How could you look us in the eye every day for years or yourself in the mirror knowing this is who you truthfully were inside?  Was there ever any shred of humanity in you, or was it all just lies?

How can she or I ever trust anyone again?  I will never be able to trust someone is who they say they are anymore.  I will never be able to trust even those who seem trustworthy.  Trust is irrevocably broke for us.

Because of you her family is shattered, and she's lost her dad.  How painful it is to watch her grieving the loss of you and broken from the loss of all of the life that she had ever known.

Every happy memory in our past life together, all of the family fun and joy will forever be tainted and soiled by your sick actions.

Every moment forward of her life, all of life's milestones and special times she will feel the agony of loss over the lack of your presence.

You lowly thief.  You robbed her of her innocence, her childhood, her family, her joy, her innocent love of her father, her chances for a happy and healthy future, a life full of joy.

Your selfish and depraved actions caused my child to be taken from me at a time when she needed me most.  I

1   couldn't hug her, hold her hand, or see her face.  I couldn't

2   be there for her to comfort her and shelter her from all this

3   pain.

4         Everything that was familiar to her, her home, her

5   family, her school, her friends, her community are all gone

6   from her world now.  She was ripped from her life and from me.

7         I couldn't spend Christmas or new year's with her,

8   not even her birthday.  I missed so many special times, and I

9   want back the time with my girl that has been taken from me.

10         Your perverse need to involve me in your depravity

11   and your sick fabrications, telling lies about me and my

12   family, you shared photos you had taken of me without any

13   knowledge that you attempted to present in your distorted

14   alternate reality as something as foul as you.

15         I had to be informed by Homeland Security that they

16   had seen videos and photos of me naked that you distributed.

17   These were either taken without my knowledge or were private

18   photos that you promised were just between us alone as husband

19   and wife.  You betrayed my trust and violated my privacy.

20         I was given by my attorney and read what you had

21   messaged, lewd and vulgar things about me and these photos.  I

22   was informed that you also shared images of your daughter and

23   said things about her that are the foulest things I have never

24   known a human to say, things that I can never forget.

25         You have shamed and humiliated me and her and

allowed other perverts and predators to use our pictures for their personal gratification.

I am nauseated, my stomach full of vile at the thought that you were taking pleasure in sharing images of your wife and of your own daughter with the worst of society.

I don't feel safe anymore. At first I couldn't eat or sleep. I felt deeply ashamed and wronged. I feel vulnerable even alone in my own home. I still have terrible insomnia and don't sleep.

Our home -- our home was torn apart, every inch of it, during the search. It took me nearly a month of work to make it habitable again. It felt like I was living in the crime scene and triggered by every object I saw. As I sorted through the aftermath, everything brought back memories of our shattered life, surrounded by ghosts.

I was afraid to go outside to face our neighbors, our community, co-workers. I couldn't even go to the grocery store without having a massive anxiety attack.

The stigma of what you have soiled us with will never leave us. We can never have a normal life again.

We will continue to carry your actions, like it or not, for the rest of our lives. At first, I was tormented with intense fear and panic attacks, crushing depression, and debilitating anxiety. I had to take time off of work to deal with the trauma and the shock.

1   Now I live each day alternating between numbness and

2   constant anxiety, bitter anger, and despair.  I cannot talk to

3   men or look them in the eye.  I can barely bring myself to say

4   good morning to my male co-workers.  I feel insecure and

5   unsafe in crowded places.  I feel uncomfortable in my own

6   skin.  And even the simplest conversations seem unbearable.

7   My daughter and I have had to go to therapy weekly

8   for nine months.  Sophia and I will need specialized therapy

9   for the rest of our lives.  This, along with attorney's fees,

10  legal battle, the fight to regain custody of my daughter,

11  travel back and forth to her placement an hour and a half

12  away, medical appointments, financial strain, financial burden

13  in the future.  I had to hire an attorney both for my

14  dependency case and for my divorce.

15  It took me months to get everything of yours off my

16  credit report so that I could buy a home.  I was forced to

17  relocate.  I had to put down a down payment in order to

18  qualify for the mortgage so quickly.  So I was forced to

19  borrow from my retirement fund to do so.

20  I had to move from our home and purchase another

21  home in a new school district so that Sophia could go to a new

22  school.  I had to start a new life elsewhere.  We had to purge

23  all of our belongings that could be a reminder to either her

24  or I.  We had to pay for costly moving expenses.  I had to

25  travel and replace nearly all of the furniture, household

1 items.

2     It's been a long process and a huge undertaking, and

3 I've had to do a lot of it alone.  I'm emotionally and

4 physically exhausted.

5     I was forced to give up our family pet, because of

6 your deviant and sick involvement with the dog has forced me

7 to have to give Sophia's dog to a neighbor.

8     She's absolutely heartbroken over it.  She doesn't

9 understand.  She doesn't -- she's not allowed to ever have a

10 dog again and will be working through this and what you did to

11 her in therapy for many years.

12     I have been told that I need to steer her away from

13 her love of animals and channel her into other interests.  You

14 even took away her right to love animals.  You've tarnished

15 even the most innocent things.

16     It's nearly nine months from the day a bomb went off

17 in our lives, and still I am fighting every day to get my

18 little girl back.  Your actions put distance between her and

19 I, not by my wanting.  Our relationship as mother and daughter

20 will never be the same because our world will never be the

21 same.

22     She has nightmares and is always emotional,

23 sensitive, or angry and fearful.  She clings to me when it's

24 time to see me go.  I see what it's doing to her every time I

25 have to come and go because of the rules of visitation, and it

1 breaks my heart.  I miss her so much.  None of this has made

2 anything any better.

3   I should have been with her by her side, helping

4 her, supporting her, comforting her, and you took that away

5 from us.  I can't even be there for her to help her heal

6 because of you.

7   I have had to cut ties with all of the people that

8 we knew, friends, co-workers, people in the community.  I've

9 been forced to isolate myself to protect my daughter's privacy

10 and mine.  I cannot speak to anyone outside of counseling or

11 family about the case.

12   The loneliness and the silence in the house is

13 deafening, but I am forced to not allow myself the luxury of

14 weakness.  I have to push on and be strong for my daughter.  I

15 cannot curl up and cry in misery.  I must be there for her and

16 do everything I can to help her.  She needs me, and I will

17 have to be both parents to her in the future for the rest of

18 our lives.

19   She will grow up without a father.  She will grow up

20 damaged as a girl who not only -- her father not only molested

21 her but allowed others to sexually violate her.

22   Hell is too good for you.  I sheltered and protected

23 her from the whole world and all its evils, but who would have

24 ever thought I needed to shelter her and protect her from you?

25   You devious two-faced Jekyll and Hyde.  You

charlatan.  I hope you endure more violation and shame than you ever caused us.  I hope you are tortured for the rest of your days by the horror that you have inflicted on us.  I hope you stew alone on your pain and misery for the rest of your life, that you never find solace, that you never again know love, kindness, comfort, or joy.

You will never see our faces or hear our voices.  I never want to see or hear you ever again.  Nothing you ever say can ever erase what you have done.  An apology would be an insult, and I will not suffer the indignation.  No punishment to you ever will be enough.  You have lost us forever, and you deserve to live a long, lonely, miserable life, and to die alone in a cell.  You deserve to never feel safe.  You deserve to be haunted by what you have done.

She is the best thing that has ever happened to me in my life, and you are the worst.  You gave me my child and for that I am grateful.  But look at what you did with the blessings that you had been given.

You have no conscience.  You have no and so deserve no empathy.  You are no longer human.  The poisonous evil that you are consumed you from the inside out until it destroyed you.  There is no man anymore, just the monster.  So live in your house of horrors.  You belong with the monsters.  You will rot away in eternity.  And Sophia and I will pick up the shattered pieces and move on as best we can.

1       Thank you for giving me the chance to read that.

2       THE COURT:  Is there anything you want to tell me?

3  I guess you were talking to me indirectly when you were

4  talking to him.

5       THE WITNESS:  Yes, Your Honor.

6       THE COURT:  Is there anything else you want to say?

7       THE WITNESS:  I only have one thing to add, in that

8  I will at least thank you for doing what's right in telling

9  the truth about me, finally.

10      THE COURT:  Thank you, ma'am.

11      Ms. Coates, given my ruling on the Government's

12  motion, can you tell me what your calculation is with regard

13  to the application of the guidelines?

14      MR. COATES:  The total offense level would be 42,

15  which has a guideline range of 360 to life, but due to the

16  mandatory maximums, it would be 360 to 960 months.

17      THE COURT:  Everything else remains the same?

18      MR. COATES:  Yes, Your Honor.

19      THE COURT:  Thank you, ma'am.

20      Do you know of any reason why the Court should not

21  now proceed with the imposition of sentence?

22      MS. NAIR:  I know of no reason, Your Honor, and I'm

23  not certain, but at this point we don't -- no longer wish the

24  record to be sealed.

25      THE COURT:  It's not.

1    MS. NAIR:  Okay.

2    THE COURT:  Yes, ma'am.  Thank you for reminding us.

3    MR. NAPIER:  Nothing from the Government, Your

4    Honor.

5    THE COURT:  Mr. Esposito, do you wish to make a

6    statement, present any information in mitigation of sentence?

7    This is your opportunity to speak and your opportunity to have

8    people speak on your behalf, if you wish.

9    THE DEFENDANT:  No, Your Honor.  Only that I will --

10   I will bear it.  I will bear it.

11   Your Honor, and also that I am truly sorry from -- I

12   don't know how I got to where I am today.  I'm sorry.  I don't

13   know how I became who I am today, but I am truly sorry, and I

14   accept the punishment for what I have done.

15   THE COURT:  Well, I am required to answer the

16   mandate of Congress in considering certain factors in

17   determining what a reasonable sentence is.  Those factors are

18   set forth in 18 United States Code, Section 3553, and those

19   factors include the nature and circumstances of the offense

20   and the history and characteristics of the defendant.  These

21   factors, along with others, were thoroughly addressed in the

22   very -- the outstanding presentence report prepared by

23   Ms. Coates with the probation office.

24   With regard to the latter of those two categories of

25   consideration, the history and characteristics of the

1  defendant, I read the beautifully written heartfelt letters

2  from Mr. Esposito's mother, father, brother, and maternal

3  grandmother describing Mr. Esposito's childhood and his

4  capacity for kindness.  They all express surprise and profound

5  sadness that they experienced upon learning of the defendant's

6  conduct leading to the crimes of conviction.

7         I've also read Ms. Nair's excellent memorandum,

8  Document 43 in this court's file, and I read the report

9  from -- I'm not sure how to pronounce it -- Dr. Rochelle

10 Taormina.

11        It appears that the defendant was sexually abused as

12 a child.  It also appears he was a kind, shy child.  He now

13 suffers from posttraumatic stress disorder, persistent

14 depressive disorder, and unspecified anxiety disorder.

15        Now, I also have comments with regard to the latter

16 category, nature and circumstances of the offense, but I will

17 wait to hear from counsel before I proceed.  I just want to

18 put you on notice that I have thoroughly considered all of the

19 submissions that have been made in this case.

20        Is there anything you wish to say, Ms. Nair?

21        MS. NAIR:  Yes, Your Honor.  I would like to point

22 out to the Court that Mr. Esposito did take his time and he

23 actually wrote out a letter to present to the Court.  After

24 hearing the emotional response from his ex-wife, he can't

25 bring himself to read it to the Court, nor will he allow me to

1 read it to the Court, but that it was prepared, and it is

2 filled with grappling remorse for his actions.

3      So the Court has had an opportunity to review the

4 sentencing memorandum and the request for a sentence to which

5 the defense feels would be a reasonable sentence in this

6 circumstance.  The guidelines are 360 to life.  The statutory

7 penalties carry a maximum of 960 months.

8      Four hundred eighty months is appropriate.  That's a

9 40-year sentence.  Mr. Esposito is currently 32 years old.

10 Upon release from prison, if given a 40-year sentence, he will

11 be almost 70.  His daughter will be well in her 40s, almost

12 50.  He will have no contact with his daughter, no contact

13 with his ex-wife.  His parents will likely be deceased.

14      His older brother, Christopher Esposito, is in court

15 today and was the only family member that was able to make it.

16 The mother of Mr. Esposito and the father of Mr. Esposito

17 found it very difficult to come to court today, even though

18 they stand by his side, because it is their granddaughter too.

19      THE COURT:  Why don't we take about five minutes.

20 Okay?  We'll take a short break.

21      (Recess at 10:25 a.m., until 10:32 a.m.)

22      MS. NAIR:  Thank you, Your Honor.

23      As I was saying, Christopher is present in the

24 courtroom today on behalf of Mr. Esposito.

25      Bringing the Court back to other factors that the

1   Court should take into consideration when determining what is

2   a reasonable sentence for Mr. Esposito.  The facts are

3   horrific.  The history and characteristics of Mr. Esposito

4   shows an individual who has no criminal -- very little

5   criminal history -- excuse me -- has been a caring individual

6   since his birth.

7           Even his ex-wife has made statements to the Court

8   that they can't understand how an individual who was so

9   loving, so caring, so concerning, so considerate could ever

10  have a separate life that no one, besides him and the

11  individuals whom he communicated with online -- that was the

12  worst of the worst.  He understands that what he did to his

13  daughter can never be taken away.  And he is filled with

14  remorse and guilt behind that, behind his own actions.  He is

15  willing to suffer for his actions.

16          I think it's even more telling, the Court made a

17  statement that in granting the 5K that one level was warranted

18  because ultimately law enforcement could have found out who

19  these individuals were.

20          Individuals who we represent who have a 5K on their

21  documents usually suffer greatly in custody.  Individuals who

22  are accused of child pornography viewing suffer greatly in

23  custody.  Individuals who sexually molest children are usually

24  at the mercy of individuals in custody because they are often

25  victimized themselves when they are in custody.

1        Mr. Esposito knew that this was a possibility when

2   he came into custody, and, yet, he still put himself out there

3   and was willing to cooperate against two individuals whom he

4   helped to sexually abuse his daughter so they could never do

5   this again to anyone else, and he wanted to ensure that they

6   were to go away for a long time in prison as well, and if he

7   could help in any way, he did, even though he knows this will

8   likely cause him more victimization in custody than he's

9   already going to be exposed to.

10       Mr. Esposito, looking beyond if we can, if we can

11  set aside the crime for a moment.  Mr. Esposito is seeking to

12  redeem his soul.  He is asking for forgiveness, knowing it may

13  never come, but he understands that the life that he has to

14  live now is one that he has to be at peace with himself at

15  some point in order to continue life, but he accepts that he

16  will continue life in prison for a very long time, and he will

17  think about his actions every moment that he is there.  He

18  will think about it every moment until the day he leaves this

19  earth.

20       I put in my sentencing memorandum about the need to

21  protect the public, to deter future conduct, to promote

22  respect for the law, and to provide just punishment.

23       Congress has set maximums on these sentences for a

24  reason.  They set maximums on these sentences because they in

25  their good conscience believe that an individual can serve a

term of incarceration and then be released back into the community with redeeming qualities.

Mr. Esposito wants released, if released, if the Court agrees, will have to serve a period of supervision where he will be closely monitored, where this will never occur again.

Because Congress has set maximums on these sentences, we urge the Court to do the same, to set a maximum and allow him to come out of custody when he's closer to 70.

The Court, by setting that sentence, is not taking away what is going to be carried with Mr. Esposito for the rest of his life. The Court is just saying simply that we agree that what Congress has said can be true. You can serve a term of incarceration and be released, not serving as an additional burden on the taxpayers by letting an individual who after 70 is going to have significant health problems and basically spend his life in custody where we're paying for that.

He can come out. He'll have family. His brothers should still be alive, and they will be supportive of Mr. Esposito.

Outside of that, Your Honor, I don't believe there's too much more that I have not put in my sentencing memorandum that lays out my reason for asking for a 40-year sentence. But I will say this: Locking Mr. Esposito up for the rest of

1  his life will not take away the pain that his daughter has

2  endured.  It will not bring comfort to his ex-wife.  She

3  expressed that she is going to have to live with this the rest

4  of her life and his decisions and his ugliness, whether she

5  likes it or not, and it will remain whether he's in custody

6  for 40 years, 60 years, or 80.

7  Knowing that he is finally seeking to redeem himself

8  and his soul, I think her last words to the Court were, *Thank*

9  *you for finally telling the truth*.  That is who Mr. Esposito

10 is outside of the crime, someone who is willing to do what is

11 right outside of the crime.  Thank you.

12 THE COURT:  Thank you, Ms. Nair.  Thank you for your

13 excellent memo, and thank you for your thoughtful comments.

14 Yes, Mr. Napier.

15 MR. NAPIER:  Thank you, Your Honor.

16 THE COURT:  I do want to make one comment regarding

17 a part of your statement, Ms. Nair.  The reason that I did not

18 grant more than one level for -- pursuant to the Government's

19 motion is that I believe that his assistance under the

20 circumstances was minimal.  He may under other circumstances

21 have been willing to do a whole lot more.  I suspect that's

22 true.

23 Yes, sir.

24 MR. NAPIER:  Thank you, Your Honor.  Your Honor, the

25 Government is asking for a sentence of 75 years in this case.

1  Put simply, this is a person who should never get out of

2  prison.

3  　　　　Defense counsel is right.  Nothing will take away

4  the pain that this defendant has brought to his family,

5  specifically his daughter, but this sentence in this case is

6  about punishment, and punishing him for the horrific crimes

7  that he committed, and hopefully to serve as some kind of a

8  deterrence for others who may be thinking about doing

9  something like this to their daughter or allowing someone else

10  to do it.

11  　　　　This Court has seen more than its fair share of

12  defendants come through these doors who have possessed and

13  distributed and received child pornography.  Most oftentimes

14  those children, those victims, are identified by series and

15  are, otherwise, nameless victims who unfortunately we see

16  every day, and we read through victim impact statements and

17  not being able to put really a face to the victim.

18  　　　　This case is much different.  In this case we have a

19  child, a seven-year old child, who went to an elementary

20  school about ten miles away from here, a child who trusted her

21  father and loved her father, a child who was violated in every

22  possible imaginable way by her father, a child who was tied

23  up, made to use various sex toys, a child whose image has now

24  been sent across the Internet to other people so that they

25  could derive sexual gratification from her pain and her

torture.

Now, because of this defendant's actions, this child is one of those victims. She's just like Jenny. She's just like Cindy. She's just like the Marineland series, all of the these other series that this Court is unfortunately all too familiar with.

Now people many miles away, hundreds of miles away, perhaps in different countries will see her image, will see her videos because this defendant shared them, because her father shared them.

The presentence report talks about his diagnosis of agoraphobia, his fear of leaving home. I'll point out, Your Honor, that he wasn't afraid to leave home to take his little girl to the zoo to meet strangers. He wasn't afraid to leave home to allow his child to be sexually violated in every way possible by strangers.

Defense counsel talked briefly about his criminal history. I admit that he has a criminal history of one. But I think it's significant to point out that the one time he was arrested he took his daughter in the car while he tried to pick up a prostitute.

It's true this case has many victims. Obviously, his daughter is the most violated person, but cases like this destroy families and tear them apart. I can't even fathom, being a father myself, the horror that his parents feel,

1    watching their son grow up and the many things that he's done

2    throughout his life as a child and now seeing what he's

3    become.

4         But what he has become is, as Ms. Esposito testified

5    about, it's this Jekyll and Hyde, this person who has lived

6    two different lives, this person who talked to strangers on

7    the Internet about his seven-year-old daughter and referred to

8    his seven-year-old daughter as, *my little angel slut*.

9         As he sent pictures of his daughter in the most

10   obscene way, he talked about his daughter in these chats with

11   these men that he did not know and encouraged them to use her.

12        And we know, Your Honor, that these weren't just

13   fantasies because that's exactly what he did.  He met this

14   couple in Tampa, and he took his seven-year-old daughter to a

15   hotel room and to their home and allowed this couple to

16   violate her in every imaginable way.

17        He didn't try to stop it.  He didn't try to say no.

18   Instead, he sat on the couch, and he took pictures of it, and

19   we have those pictures.  We can see him sitting on the couch

20   or sitting in the chair with his leg up as the pictures show

21   his daughter being violated over and over again.

22        I'm not gonna belabor the point about the chats, but

23   the chats as detailed in the PSR are very, very graphic and

24   very, very disturbing.  We know that these weren't fantasies

25   for this defendant.  He talks in chats about this is going to

1   be a great memory.  He was setting his child up for a lifetime

2   of pain and a lifetime of torture, to be revictimized every

3   time someone else views these images.  We have -- we're

4   powerless because we have no way of stopping that.  He set

5   that into motion by sending those images out into the

6   Internet, and we're simply powerless to stop it.

7        Instead, in all likelihood, Special Agent Grey will

8   be contacted in the future in order to identify the specific

9   series, when others have it on their computer.

10       This defendant talked to the Tampa couple and he

11  said, *We think you guys are the best.*

12       And something else about these images that we don't

13  necessarily think about, they're going to be used, as some of

14  these images often are, in order to groom other children.

15  Parents, fathers, stepfathers, will in all likelihood see

16  these images and use them in order to groom their daughter and

17  say, *See, this little girl did it.  It's okay.*  And the cycle

18  of abuse unfortunately will continue.

19       He estimates that he abused his daughter one or two

20  times a month for 18 months.  I have no way to dispute that.

21  I don't know how many times this happened, but I know that

22  once was more than enough.

23       Ms. Esposito mentioned having to give the dog away

24  because of the grotesque, horrific things this man did with

25  the dog and with his daughter.

1    There are millions of people across the country and

2    across the world who suffer terrible childhoods, suffer from

3    depression, suffer from anxiety, and by and large those people

4    do not inflict the pain that this man has inflicted.

5    It always strikes me in cases like this -- and I'll

6    tell the Court, this is the most horrific case that I've been

7    a part of in my time as a prosecutor -- of people who have

8    been abused themselves and know the pain, know the suffering,

9    and make a decision, a conscious decision, to inflict that

10   pain on someone else so that that cycle continues.  That

11   concept has always been hard for me to wrap my head around,

12   why someone who knows the pain would inflict that upon

13   especially a loved one, let alone anyone else.

14   I'm sure there's a psychological reason and a

15   psychologist could try to come up and explain that to me, but

16   it's always something I've had trouble wrapping my head

17   around.

18   The only thing that I could try to analogize it to

19   in my own life is growing up the son of divorced parents and

20   never wanting my children to have to suffer divorce, and

21   knowing that what I went through as a child, not wanting to

22   repeat that, and I know how strongly I felt about that, and I

23   can only imagine that someone who was abused as a child

24   wouldn't feel the same way about stopping that cycle of abuse.

25   Your Honor, this is a graphic, horrendous, horrific

1  case.  We've had to discuss things that most people probably

2  sitting back here never dreamed they would be sitting and

3  listening to.

4        This case is about punishment.  Under the 3553

5  factors, Your Honor, the nature and circumstances of this

6  offense could not be worse.  This defendant has taken away the

7  innocence of a child, his child, and for that he should never

8  be on the outside of a prison.

9        Thank you, Your Honor.

10       THE COURT:  I always give the defendant the last

11  word.

12       Ms. Nair, is there anything else you want to say?

13       MS. NAIR:  No, Your Honor.

14       THE COURT:  Would you accompany your client to the

15  lectern, please?

16       When I described earlier some of the things I

17  considered with regard to history and characteristics of the

18  defendant, and indicated that I would later take up the second

19  part of that -- of that section of 3553, I ended with nature

20  and circumstances, which is where Mr. Napier ended his

21  argument.  Well, I suppose his argument included -- the entire

22  argument focused on the nature and circumstances of this

23  offense.

24       I considered the presentence report and the

25  statements made this morning with regard to that

1 consideration. I think that Mr. Napier's comment that the

2 conduct of the defendant was worse than -- beyond anything

3 that the people here in attendance this morning would expect

4 to hear is correct, but I would add that it's probably beyond

5 the imagination of most normal people.

6         It is depraved conduct that no civilization allows.

7 I think all civilizations understand the importance of

8 protecting children and have rules requiring that they be

9 protected.

10        The abuse that this victim suffered was at the hands

11 of her father, and every child is entitled to the protection

12 and trust of two people, a mother and a father. And this

13 defendant violated his daughter's trust, as well as that of

14 his wife, who is the mother of his child.

15        And the abuse didn't happen once or twice but was

16 ongoing. By the defendant's own admission, at least 36 times

17 he engaged in the abuse of this child, which is relevant

18 conduct to the crimes of conviction.

19        The defendant's crimes are categorically serious,

20 but the specific conduct is extraordinary by comparison. I'm

21 not going to go into the details. They've been referred to

22 throughout and are set forth clearly in the presentence report

23 that includes the conversations where the defendant is

24 describing what he does with this child and what he -- the

25 conduct he's marketing this child to participate in with

strangers.

And he will always have those memories. I guess they're somehow satisfying to him, and he will continue to have those while he serves his term of imprisonment. Again, the idea that such -- seeing such things happen to one's daughter would create pleasant memories is beyond the comprehension of most, most everybody, I guess, with a few exceptions. The defendant is an exception.

With regard to the possession of pornography count, the sentence imposed takes into account the fact that some of that pornography included his images that he created, images of his daughter.

That is correct, isn't it, Mr. Napier?

MR. NAPIER: Yes, Your Honor, a portion of the total number of images. I believe we had over 2,750 images. If I can have just a moment about the number of images, Your Honor.

THE COURT: And the damage that the defendant has done to the child is immeasurable and irreparable. I hate to say that because I hope that she can find peace. I hope that she'll be able to at some point resume a normal life and maybe with the help of experts and through therapy and the love of her mother and the love of her grandparents, maybe she can make something out of her life. Maybe she can overcome it to some extent. But when her mother says that her life is scarred, that really is an understatement.

1    And it doesn't stop there.  I can tell from the

2    letters that were written by the defendant's family that

3    they're of above average intelligence and sensitive and loving

4    people, and they loved the daughter -- their granddaughter

5    that this defendant so brutally used.  And, of course, it

6    doesn't -- it doesn't stop with the parents.  It's his

7    brothers who love him and were aware of and benefitted from

8    his kindness as a child.  And the mother has described all of

9    this in heartbreaking detail this morning.  But all of it

10   establishes cruelty of this defendant's conduct.

11   I emphasized that bifurcated factor under 3553, but

12   I assure counsel and the defendant and others that I have

13   considered all of the criteria under 3553 in determining what

14   a reasonable sentence is in this case.

15   The Court has asked the defendant why judgment

16   should not be pronounced, and after hearing the defendant's

17   response I find no cause to the contrary.

18   The parties have made statements and the defendant

19   only briefly, but counsel spoke on his behalf, and I've

20   advised counsel of the other things that I've received, the

21   letters and the report from the doctor and the memorandum that

22   Ms. Nair submitted.  I also reviewed, of course, the

23   presentence report.

24   Pursuant to Title 18 United States Code, Sections

25   3551 and 3553, it's the judgment of the Court that the

1  defendant Jamie P. Esposito is hereby committed to the custody

2  of the Bureau of Prisons to be imprisoned for a term of

3  900 months.  This term consists of 360 months on each of

4  Counts 3 and 4 and a term of 120 months on Count 6, all such

5  terms to run consecutively.

6          Upon release from imprisonment, you shall serve a

7  life term of supervised release.  The term consists of a life

8  term as to Counts 3 and 4 and 6.  All such terms to run

9  concurrently.

10          While on supervised release, you shall comply with

11  the standard conditions adopted by the Court in the Middle

12  District of Florida.  In addition, you shall comply with the

13  following special conditions:

14          One, you shall participate in a mental health

15  program specializing in sexual offender treatment and submit

16  to polygraph testing for treatment and monitoring purposes.

17  You shall follow the probation officer's instructions

18  regarding implementation of this directive.  Further, you

19  shall contribute to the cost of such treatment and polygraph

20  not to exceed an amount determined reasonable by the probation

21  officer, based on ability to pay or availability of third

22  party payment, and in conformance with the probation officer's

23  sliding scale for treatment services.

24          You shall register with the state sexual offender

25  registration agency in any state where you reside, visit, are

1   employed, carry on a vocation, or are a student as directed by

2   the probation officer.

3         The probation officer shall provide state officials

4   with all information required under the Florida Sexual

5   Predator and Sexual Offender Notification and Registration

6   Statute. In Florida, that's Florida Statute 943.0435, and the

7   Sex Offender Registration Notification Act, Title 1 of the

8   Adam Walsh Child Protection and Safety Act of 2006, Public Law

9   109 through 248 -- dash 248 -- and may direct the defendant to

10   report to these agencies personally for required additional

11   processing, such as photographing, fingerprinting, and DNA

12   collection.

13         You shall have no direct contact with minors, that

14   is people under the age of 18, without written approval of the

15   probation officer, and you shall refrain from entering into

16   any area where children frequently congregate, including

17   schools, day care centers, theme parks, and playgrounds and

18   other places of that nature.

19         You are prohibited from possessing, prescribing to,

20   or viewing any images, video, magazines, literature, or other

21   materials depicting children in the nude or in sexually

22   explicit positions.

23         Without prior written approval of your probation

24   officer, you are prohibited from either possessing or using a

25   computer, including a smartphone, a handheld computer device,

1   a gaming console, or an electronic device capable of

2   connecting to an online service or an Internet service

3   provider. This prohibition includes a computer at a public

4   library, an Internet cafe, your place of employment, and

5   educational facility.

6         You are also prohibited from possessing an

7   electronic data storage medium, including flash drive, compact

8   disc, and floppy disk or using data encryption technique or

9   program.

10         If approved to possess or use a device, you must

11   permit routine inspection of the device including the hard

12   drive and any other electronic data storage medium to confirm

13   adherence to this condition.

14         United States Probation Office must conduct the

15   inspection in a manner no more intrusive than necessary to

16   ensure compliance with this condition. If this condition

17   might affect a third party, including your employer, you must

18   inform the third party of this restriction, including the

19   computer inspection provision.

20         You'll submit to the search of your person,

21   residence, place of business, any storage units under your

22   control, computer, or vehicle, conducted by the United States

23   Probation Office at a reasonable time, in a reasonable manner,

24   based on reasonable suspicion of contraband or evidence of a

25   violation of condition of release.

1        You shall inform any other residents of the

2   premises -- that the premises may be subject to a search

3   pursuant to this condition.  Failure to submit to a search may

4   be grounds for revocation.

5        You shall be prohibited from incurring new credit

6   charges, opening additional lines of credit, or obligating

7   yourself for any major purchases without approval of your

8   probation officer.  You shall provide the probation officer

9   access to any requested financial information.

10       Having been convicted of a qualifying felony, you

11  shall cooperate in the collection of DNA as directed by your

12  probation officer.

13       The mandatory drug testing requirements of the

14  Violent Crime Control Act are waived; however, I order that

15  you submit to random drug testing not to exceed 104 tests per

16  year.

17       The determination of restitution is deferred

18  pursuant to Title 18 United States Codes 3664(d)(5).  A date

19  for final determination of victim losses shall be under a

20  separate order and will not exceed 90 days.

21       Based on your financial status, I waive imposition

22  of a fine.

23       I assume there's no objection to the Court entering

24  the final order of forfeiture.

25       MS. NAIR:  No objection, Your Honor.

1          THE COURT:  That order will be entered.

2          It's further ordered that you shall pay the United

3     States special assessments totalling $300.  That is due

4     immediately.

5          I find that you are indigent, and the $5,000 special

6     assessment pursuant to 18 United States Code, Section 3014, is

7     not imposed.

8          After considering the advisory sentencing guidelines

9     and all of the factors identified in the United States Code

10    Section 3553(a)(1) through (7) I find the sentence imposed is

11    sufficient but not greater than necessary to comply with the

12    statutory purposes of sentencing.

13         The Court has accepted the plea agreement because

14    it's satisfied the agreement adequately reflects the

15    seriousness of the actual offense behavior and accepting the

16    plea agreement will not undermine the statutory purposes of

17    sentencing.

18         Under the plea agreement, you entered a guilty plea

19    to Counts 3, 4, and 6 in return for dismissal of Counts 1, 2,

20    and 5.  In accordance with the plea agreement it's ordered

21    that Counts 1, 2, and 5 of the Indictment be dismissed.

22         Having pronounced sentence, do you -- well, let

23    me --

24         Before I do that, I need to make a recommendation to

25    the Bureau of Prisons based on Ms. Nair's argument here this

1  morning and on Dr. Taormina's report.  I do recommend that

2  Mr. Esposito be closely monitored to ensure that he doesn't

3  harm himself.  I also recommend that he not be placed in

4  general population because of his mental illness, but that

5  also facilitates your other concerns, I hope, Ms. Nair.

6          MS. NAIR:  Yes, Your Honor.

7          THE COURT:  Finally, I recommend that he receive

8  medical and psychological therapy for mental illness,

9  personality disorders described in Dr. Taormina's report.

10          MS. NAIR:  Your Honor, if I may, can we add a

11  recommendation for specific placement of Coleman?

12          THE COURT:  Well, you can do that, but I don't know

13  Coleman offers these other things.

14          MS. NAIR:  Okay.  If possible, if they do --

15          THE COURT:  I recommend that if Coleman can --

16          MS. NAIR:  Thank you.

17          THE COURT:  -- is able and -- if the Bureau of

18  Prisons is able to comply with my recommendations at Coleman,

19  I recommend that he be confined at Coleman.

20          MS. NAIR:  Thank you, Your Honor.

21          THE DEFENDANT:  Your Honor, thank you.

22          THE COURT:  I'm sorry.  I misspoke in imposing the

23  sentence.  The sentence for the possession of child

24  pornography, because of the reasons stated earlier, is

25  180 months, not 120.  Apparently, I misread that.  So that's a

1  total of 900 months; otherwise, it comes up short.

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  So it's 180 for Count 6.

4          Court having pronounced sentence, does counsel for

5  the defendant or the Government have any objections to the

6  sentence or the manner in which the Court pronounced sentence?

7          MS. NAIR:  Yes, Your Honor.  We object as

8  substantively unreasonable.

9          THE COURT:  Okay.

10          MR. NAPIER:  No objection from the Government, Your

11  Honor.

12          THE COURT:  Okay.  Now, counsel urged the Court to

13  impose a sentence that would allow the defendant to redeem his

14  soul, and I -- those matters are beyond this court and my

15  powers and jurisdiction, but redemption is a matter that he

16  will have to address in the manner that he sees fit.  It's not

17  that I don't understand that and appreciate your argument,

18  Ms. Nair, but my sentence is based on the statute and the

19  facts of this case.

20          To the extent permitted by your plea agreement,

21  Mr. Esposito, you have the right to appeal from the judgment

22  and sentence within 14 days from this date.  Failure to appeal

23  within the 14-day period shall be a waiver of your right to

24  appeal.  The Government may file an appeal from this sentence.

25          You're also advised that you're entitled to

1    assistance of counsel in taking the appeal, and if you're

2    unable to afford a lawyer, one will be provided for you.

3         If you're unable to afford the filing fee, the clerk

4    of court will be directed to accept the notice of appeal

5    without such fee.

6         Do you understand everything that's happened, sir?

7         THE DEFENDANT:  Yes, Your Honor.

8         THE COURT:  Now, I misread that, how the sentence

9    was constructed.  It's 360 months on the first two counts and

10   180 on the last.  Do you understand that?

11        THE DEFENDANT:  I understand the clarification, Your

12   Honor.

13        THE COURT:  Okay.  The Court is in recess.

14    (WHEREUPON, this matter was concluded at 11:13 a.m.)

15                        *   *   *

16              CERTIFICATE OF REPORTER

17   I certify that the foregoing is a correct transcript of the
     record of proceedings in the above-entitled matter.
18
      _/s/ Suzanne L. Trimble_____         9/27/17
19   Suzanne L. Trimble, CCR, CRR, RPR         Date
     Official Court Reporter
20

21   I certify that the foregoing is a true and correct copy of
     the transcript incorporating redactions of sealed portion of
22   proceedings as ordered by Judge John Antoon II.

23    _/s/ Suzanne L. Trimble_____         9/27/17
     Suzanne L. Trimble, CCR, CRR, RPR         Date
24   Official Court Reporter

25